# Crawford, Appellant, v. Dollar Savings Fund & Trust Company.

*Principal and agent—Stock brokers—Re-hypothecation of securities of customer—Stock—Certificate of stock—Blank assignment.*

1. Where a stock broker calls upon a customer for additional margin, and the latter instead of putting up the cash, gives to the broker certificates of stock, and instead of signing the blank power printed on the back of the certificates, executes and delivers with the certificates in accordance with the custom of brokers, blank powers on other pieces of paper, and the broker pledges the certificates to a bank, the bank is under no duty to make inquiry as to the authority of the .broker to pledge the securities, because the assignment printed on the back of the certificate had not been signed by the owner.

2. In such a case the bank may hold the certificates as an innocent purchaser for value as against the customer of the broker, although at the time they were pledged they were received as additional collateral for a pre-existing indebtedness of the broker, if it appears that thereafter the bank relying upon the security of the stock thus pledged, surrenders other valuable securities to the broker without receiving anything in lieu of them,

Argued Nov. 2, 1911. Appeal No. 230, Oct. T., 1911, by plaintiff from decree of C. P. No. 1, Allegheny Co., June T., 1908, No. 838, dismissing bill in equity in case of William J. Crawford v. Dollar Savings Fund & Trust Company. Before FELL, C. J., BROWN, MESTRE-ZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction and for the delivery of certificates of stock. Before MACFARLANE, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*John P. Hunter*, with him *Walter Lyon*, for appellant.—The release of the Plate Glass Company's stock did not make the defendant a purchaser for value, without notice, of Crawford's stock: Cummings v. Boyd, 83 Pa. 372; Gould v. Farmers' Loan & Trust Co., 23 Hun. 322.

The defendants are not purchasers for value without notice: Bughman v. Central Bank, 159 Pa. 94; Tainter v. Hyneman, 6 Phila. 202; McNeil v. Tenth Nat. Bank, 46 N. Y. 325.

The appellee, having received this stock as collateral for a pre-existing indebtedness, is not a holder for value in due course: King v. Mellon Nat. Bank, 227 Pa. 22; Ashton's App., 73 Pa. 153; Callendar v. Kelly, 190 Pa. 455; Morse v. Godfrey, 3 Story 364; Cummings v. Boyd, 83 Pa. 372; Royer v. Keystone Nat. Bank, 83 Pa. 248; Linnard's App., 3 Atl. Repr. 840; Gould v. Farmers' Loan & Trust Co., 23 Hun. 322; Weaver v. Barden, 49 N. Y. 286; McNeil v. Tenth Nat. Bank, 46 N. Y. 325; Tompkins v. Morton Trust Co., 91 App. Div. 274 (86 N. Y. Supp. 520); Bank of New York v. Vanderhorst, 32 N. Y. 553; Goodwin v. Mass. Loan & Trust Co., 152 Mass. 189 (25 N. E. Repr. 100).

*Willis F. McCook,* with him *B. J. Jarrett* and *Jas. W. Collins,* for appellee.—Considering the circumstances and the purposes of the delivery of the shares of stock in controversy by plaintiff to Whitney & Stephenson he conferred upon them the right of re-hypothecation: Markham v. Jaundon, 41 N. Y. 235; Skiff v. Stoddard, 63 Conn. 198; Furber v. Dane, 203 Mass. 108 (89 N. E. Repr. 227).

The subsequent release by defendant to Whitney & Stephenson, of securities pledged, at less than their value, and its release of the Pittsburgh Plate Glass stock without any payment, relying on the security of the stock in controversy, constitutes a consideration and makes defendant a holder for value of said coal stocks: Linnard's App., 2 Sadler 195.

OPINION BY MR. JUSTICE BROWN, April 29, 1912:

Whitney & Stephenson, a firm of brokers, doing business in the city of Pittsburgh, were carrying certain stocks for the appellant. On March 17, 1907, they called upon him for more margin. He was not able to give them any money, but they agreed to take from him, as additional security, four hundred shares of the capital stock of the Pittsburgh & Westmoreland Coal Company, for which he held four certificates for one hundred shares each. He delivered these certificates to the brokers, but did not sign the assignment and power of attorney printed on the back of each. He, however, gave them, along with the certificates, four blank powers of attorney, which he had duly signed. On March 18, the day before the brokers received the certificates of stock from the appellant they were called upon by the appellee to give it additional collateral for a large loan it was carrying for them, and, on the same day they received the four certificates of the Pittsburgh & Westmoreland Coal Company stock from the appellant, they re-hypothecated them to the appellee, pinning to each certificate one of the blank powers of attorney

signed by him. The court below found that there was nothing in the relation existing between the appellant and his brokers which authorized this re-hypothecation of his securities, and, as the appellee had received them from the brokers for their pre-existing indebtedness to it, the delivery of the stock was without consideration, and the appellee was, therefore, not a holder for value; but the court further held that, as the appellee, in reliance upon its right to hold the stock in controversy for the indebtedness of Whitney & Stephenson, had subsequently surrendered to them certain securities at less than their market value and twenty shares of certain stock without receiving anything therefor, it had become a holder for value of the four certificates, and appellant's bill, praying for a delivery of the same to him upon payment to the appellee of $56.84, the amount of his indebtedness to the bankrupt firm of brokers, was dismissed.

The first contention of the appellant to be noticed is that the appellee ought to have made inquiry as to the authority of Whitney & Stephenson to pledge the securities, because the blank assignments and powers of attorney printed on the certificates had not been signed by the appellant, and the undated blank power of attorney pinned to each certificate was sufficient to put the appellee on notice that the brokers had no right to pledge the stock. If the blank assignments and powers of attorney on the backs of the certificates had been signed by the appellant, there would have appeared on each of them the indicia of ownership in the brokers who held them, and the delivery by the brokers to a purchaser would have passed a good title. The appellant is estopped to deny that this is not true of the four certificates as he pledged them to his brokers. He signed the four blank powers of attorney and delivered them to the brokers along with the certificates of stock, with the undoubted intention of clothing his brokers with power to sell or transfer the stock. He intended

that the blank powers of attorney should be as effectual for the purpose of transferring title as if he had signed the assignment and power of attorney on the back of each certificate, and, when they were pinned to the certificates by the brokers, the very use was made of them that the appellant intended, and the appellee, in dealing with the brokers, was justified in so presuming. Another reason why the appellee was not bound to inform itself as to the authority of Whitney & Stephenson to pledge the stock was, that the custom—quite general, especially on brokers' accounts—in the banking institutions of this country, is to have a power of attorney on a separate piece of paper, so that, when the debt for which the stock is pledged is paid, the certificate can be redelivered to the owner and the power of attorney destroyed, thus leaving the certificate without any evidence upon it of its ever having been pledged or transferred. The second conclusion of law by the court below was correct, and the eleventh assignment of error is dismissed.

At the time the appellee received the certificates of stock from Whitney & Stephenson it received them as additional collateral for a pre-existing indebtedness of the brokers, and, not having been given or surrendered anything for them, it was not a holder for value: Ashton's Appeal, 73 Pa. 153; Maynard v. Sixth National Bank of Philadelphia, 98 Pa. 250; Callendar v. Kelly, 190 Pa. 455; King v. Mellon National Bank, 227 Pa. 22. Whether, as is contended by counsel for appellee, under the terms of the agreement between Whitney & Stephenson and the appellee, relating to its loan to them, it became a holder for value as soon as it received the stock, we need not decide.

When the appellee received appellant's stock, the situation continued to be just the same as if it had remained in the hands of the brokers, so far as the rights of the appellant were involved, and that situation continued as long as the appellee did not become a holder

for value; but, as the court below found, relying upon the security of this stock, which Whitney & Stephenson had pledged to it with all the indicia of ownership in themselves, it subsequently returned to them securities at less than their market value, and, on October 10, 1907, gave up twenty shares of Pittsburgh Plate Glass Company stock, without receiving anything in lieu of it. If these securities had been surrendered by the appellee at the time the brokers pledged appellant's stock to it, he could not now assert any claim to the same in the hands of the appellee: King v. Mellon National Bank, supra. What the brokers might have done with the stock of March 19, 1907, they unquestionably could subsequently have done; and, while it is to be conceded that the appellee did not become a holder for value at the time it received the stock, why did it not subsequently become so? Until it did become a holder for value, its custody of the stock was, in legal contemplation, but the custody of Whitney & Stephenson, so far as the rights of the appellant were concerned; but what was to prevent it from afterwards becoming a holder for value? If it had returned the stock to the brokers, and they had subsequently called upon it and asked to substitute the same stock for other securities which they asked to be released, and their request had been granted, the appellee would certainly have become a holder for value, and the claim of the appellant's ownership in the stock could not prevail against it. This, in effect, is just what was done. Holding in its hands certificates of stock with all the indicia of ownership in Whitney & Stephenson, who had pledged it, the appellee according to the uncontradicted testimony of its secretary and treasurer, released and surrendered to them securities of a market value of $16,435 in excess of what they paid for the release of the securities, and later it surrendered to them twenty shares of stock without getting anything in return. When the first of the securities were returned to the brokers by the appellee,

at their request, in reliance upon the stock of the appellant as security for their indebtedness, the transaction was, in legal contemplation, the same as if the brokers, up to that time, had continued to hold the stock, for, in the interval, as just stated, the custody of the appellee was but their custody, and the appellant having clothed them with all the indicia of ownership, they could have pledged it to any one for value. This is what was done with it by the brokers when they asked for a release of other securities belonging to them, which were returned to them by the appellee, in reliance upon its right to hold the four certificates in dispute. There is no recognizable distinction, so far as the rights of the appellant are concerned, between such a transaction and a pledge that the brokers might have made of his stock on March 19, 1907. In principle they are identical.

As to the contention of the appellant that, if the appellee is to be permitted to hold his stock, it can do so only to the extent of protecting itself up to the value of the securities which it surrendered, a sufficient answer is that there was no evidence of the actual value of the stock in controversy, and the appellant's admission is that there was no evidence of the value of the twenty shares of Pittsburgh Plate Glass Company stock.

The assignments of error are all overruled and the decree is affirmed with costs.