**COMMERCIAL NAT. BANK OF WASHINGTON, D. C., v. SHRIVER et al.**

**In re MERTENS et al.**

(Circuit Court of Appeals, Fourth Circuit.  July 5, 1921.)

No. 1888.

1. **Corporations ⬅149—Pledgee of stock without present consideration not a bona fide holder.**
   The holder of a certificate of stock of a corporation, who has taken it as security for an existing debt without promise of extension or other present consideration, is not protected as a purchaser for value, unless the true owner is estopped by some negligence which has enabled the person with whom he had intrusted the stock to perpetrate a fraud on the purchaser.

2. **Bankruptcy ⬅182—Pledge of stock by donee of bankrupt held ineffective against trustee.**
   A bank which took a certificate of stock as collateral on extension of a note with knowledge that the pledgor acquired the stock by gift from his father against whom a petition in bankruptcy had been filed and of other facts which charged it with notice that the father was insolvent when the gift was made, and that it was a fraud on his creditors, *held* not to have acquired title as against the trustee in bankruptcy of the father.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

In the matter of the bankruptcy of Frederick Mertens and others, individually and as partners, as F. Mertens' Sons; Henry Shriver, trus-

tee. From an order of the District Court, the Commercial National Bank of Washington, D. C., appeals. Affirmed.

R. Lee Slingluff, of Baltimore, Md., and Charles L. Frailey, of Washington, D. C. (Stuart S. Janney, of Baltimore, Md., Charles Cowles Tucker, of Washington, D. C., and Janney, Stuart & Ober, of Baltimore, Md., on the brief), for appellant.

Walter C. Capper, of Cumberland, Md. (Benjamin A. Richmond, of Cumberland, Md., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. The firm of F. Mertens' Sons, of which Frederick Mertens was a member, was adjudged bankrupt March 27, 1917, under a petition filed February 7, 1917. The issue here is whether the District Court was right in adjudging the trustee, Shriver, to be entitled to 20 shares of stock of the Third National Bank of Cumberland, the certificate for which is in the possession of the Commercial National Bank of Washington.

Frederick Mertens was owner of the certificate of stock and a director of the Third National Bank. According to his testimony and that of Frederick Mertens, Jr., in March, 1916, he indorsed the stock certificate in blank, and turned it over to Frederick Mertens, Jr., as a gift. His statement that he did this because he wished to disconnect himself with the bank is contradicted by his action in remaining on the board of directors and attending its meetings long after the alleged gift of his stock to his son. He admitted that for a year before the alleged gift his firm owed very large debts. One of the firm's pressing creditors was the Commercial Bank, holding claims which turned out to be $25,000 over the value of its collateral. The liquidation in bankruptcy shows that a year after the alleged gift the firm's assets were about $400,000 and its liabilities $4,000,000. There was no evidence of depreciation of assets or increase in liabilities within the year. It thus seems clear that the firm and its members were hopelessly insolvent when the gift is alleged to have been made; and, as against Frederick Mertens, Jr., the donee, there can be no doubt the gift was in fraud of creditors. Kehr v. Smith, 20 Wall. 31, 22 L. Ed. 313; Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363; Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908.

The Commercial Bank claims the stock as bona fide holder for value without notice. Taking as true the testimony adduced in its behalf, the Commercial Bank acquired the certificate of stock in this way: Frederick Mertens, Jr., owned a majority of the stock of the Mt. Vernon & Marshall Hall Steamboat Co., Limited, and was president of the corporation. In 1916 this corporation owed the Commercial Bank $20,000. In September, 1916, in compliance with the bank's demand for collateral, Frederick Mertens, Jr., turned over to the Commercial Bank the certificate of stock of the Third National Bank of Cumberland. He informed the president of the Commercial Bank at the time that it had been given to him by his father in 1916. There is

no evidence that when the certificate was acquired by the Commercial Bank as collateral in 1916 there was renewal of any portion of the $20,000 debt or any promise of extension. Afterwards, on March 13, 1917, a renewal note of $2,700 was given by the Mt. Vernon & Marshall Hall Steamboat Co., Limited, indorsed by F. Mertens' Sons and John P. Agnew & Co. Frederick Mertens, Jr., gave his note of same date and maturity for the same debt, in which the certificate of stock was mentioned as collateral.

It thus appears that the Commercial Bank acquired the certificate of stock in 1916, not to secure a debt then made or as consideration for a renewal of extension but merely as security for an existing debt. The general rule is that one who acquires a mortgage or other chose in action or chattel as security for an existing debt, with no promise of extension by renewal or otherwise, is not a bona fide holder for value. Peoples Savings Bank v. Bates, 120 U. S. 569, 7 Sup. Ct. 679, 30 L. Ed. 754. But an indorsee, taking a negotiable bill or note as security for an antecedent debt, even when there is no extension or renewal, is deemed a holder for value. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61. This rule has been incorporated into the negotiable instruments statute, now in force in nearly all the states.

The extent to which the Supreme Court has gone with respect to stock certificates is to hold that an agent intrusted for a particular purpose with stock certificates indorsed with a power of attorney signed in blank confers a good title on a bona fide purchaser to whom he sells for a present consideration in breach of his trust. National Safe Deposit S. & T. Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241. This was on the ground that one who intrusted to an agent instruments so constantly and freely dealt in should bear the consequences of the fraud he had enabled the agent to perpetrate. To the same effect is Russell v. American Bell Tel. Co., 180 Mass. 467, 62 N. E. 751. The Circuit Court of Appeals of the Seventh Circuit in National City Bank v. Wagner, 216 Fed. 473, 481, 132 C. C. A. 533, extended this rule to stock certificates indorsed in blank as security for an existing debt. But in that case also the owner intrusted the certificates to the person, who fraudulently turned them over to the bank as security for his existing debt. The report of the case does not show whether there was a promise of extension or renewal.

The Supreme Court decided in Shaw v. North Pennsylvania R. Co., 101 U. S. 557, 25 L. Ed. 892, that the bona fide purchaser of stolen bills of lading could not be protected as a purchaser for value, although they had been made negotiable instruments by the state law. The court points out the essential and important difference in the character and office of negotiable bills and notes and negotiable bills of lading. Bills and notes call for a certain sum of money, but do not represent the title to any particular money. The indorsee of a bill or note payable to order, or the holder of one payable to bearer, takes a good title, although it may have been stolen from the true owner. The court says:

"He may hold it although he took it negligently, and when there were suspicious circumstances attending the transfer. Nothing short of actual or

constructive notice that the instrument is not the property of the person who offers to sell it; that is, nothing short of mala fides, will defeat his right. * * * Bills of lading are regarded as so much cotton, grain, iron, or other article of merchandise. The merchandise is very often sold or pledged by the transfer of the bills which cover it. They are, in commerce, a very different thing from bills of exchange and promissory notes, answering a different purpose and performing different functions." 101 U. S., pages 564, 565, 25 L. Ed. 892.

A stock certificate is in like manner distinguished from a note or bill, as was decided in Knox v. Eden Musee A. Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700, holding that one who purchased stock certificates reissued by a bank officer, after they had been surrendered for cancellation and new certificates had been issued, could not claim the protection of a purchaser for value.

The great weight of state decisions is to the effect that one who takes a stock certificate as security for an existing debt, without promise of extension or other present consideration, is not protected as a purchaser for value. Many of the numerous decisions are cited in 14 C. J. p. 736, and in 7 R. C. L., pp. 214, 215, 278, 279; Millard v. Green, 94 Conn. 597, 110 Atl. 177, 9 A. L. R. 1610.

[1] Our conclusion is that the holder of a certificate of stock who has taken it as security for an existing debt without promise of extension or other present consideration is not protected as a purchaser for value, unless the true owner is estopped by some negligence which has enabled the person with whom he had intrusted the stock to perpetrate a fraud on the purchaser. There is no such feature of estoppel in this case, and therefore, on both reason and authority, we hold that the Commercial National Bank did not take the certificate of stock as a purchaser for value when it obtained it as collateral in 1916.

[2] What was the effect of the action of the Commercial Bank on March 13, 1917, in extending $2,700 of the debt of $20,000 of the Mt. Vernon & Marshall Hall Steamboat Company, Limited, by taking the note of the corporation and the note of F. Mertens, Jr., payable in 60 days, and the certificate of stock mentioned in the note of F. Mertens, Jr., as collateral? Previous to this, as we have shown, the bank was mere custodian of the certificate, ownership being in F. Mertens, Sr., the insolvent donee, for the benefit of his creditors. The extension of the debt on March 13, 1917, on the faith of the certificate, changed the relation and made the bank a purchaser for value of the certificate. The principle was applied in Crawford v. Dollar S. F. & T. Co., 236 Pa. 206, 84 Atl. 694.

Nevertheless, the claim of the Commercial Bank must fail, because it was a purchaser with notice of the vice in the title of F. Mertens, Jr., from whom it purchased. The bank had notice when it first received the stock, in 1916, that Frederick Mertens, Sr., had made a gift of the certificate to his son when he was unable to pay his obligations. The copartnership of which he was a member had borrowed money from the Commercial Bank for several years, and at the time of the bankruptcy the indebtedness to it was $111,110, for which it was short of collateral by $25,780. When the bank became a purchaser for value on March 13, 1917, the petition in bankruptcy had been filed.

Surely this was enough to put the bank on inquiry, which would have led to the information that F. Mertens, Sr., was insolvent when he undertook to give away the stock. The gift of the insolvent father was a fraud upon his creditors, and we think the Commercial Bank's knowledge of the father's inability to meet the large obligations to itself and the pendency of the bankruptcy proceedings put the bank on notice of his insolvency and of the invalidity of the gift to his son, and so charged it with constructive, if not actual, notice of the fraud.

Affirmed.