NATHANIEL JARVIS, JR., Respondent, v. THE MANHATTAN BEACH COMPANY, Appellant.

1. CORPORATIONS — STOCK CERTIFICATES — LIABILITY FOR WRONGFUL ACTS OF AGENT.  The liability of a corporation to a *bona fide* holder of certificates of its stock, fraudulently issued or put in circulation by the wrongful or criminal acts of its officers or agents, is determined by the general rules of law governing the relations of principal and agent as developed and applied to corporations, acting solely through such agencies.

2. CORPORATIONS — STOCK CERTIFICATES — LIABILITY FOR WRONGFUL ACTS OF AGENT.  The general rule — that the principal is liable to a third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the principal did not authorize, justify or know of the misconduct — is applicable to a corporation in the case of a fraudulent issue of stock certificates by its agent.

3. STOCK CERTIFICATES — RIGHTS OF HOLDERS.  While corporation stock certificates do not possess all the qualities of commercial paper they do possess some of them, and innocent parties, dealing in them will be protected upon analogous principles, and, in a proper case, will be entitled to compel recognition as stockholders, where power exists to issue new certificates, or to indemnity if there is not.

4. STOCK CERTIFICATES — FRAUDULENT ISSUE BY TRANSFER CLERK FOR SALE — LIABILITY OF CORPORATION TO BROKER.  If a stock broker receives in good faith from the transfer clerk of a corporation, for sale on the clerk's own account, a certificate of stock of the corporation, bearing the genuine signatures of the proper officers and of the registrar of transfers and having on its face all the essential evidence of genuineness, and having indorsed thereon a blank form of transfer purporting to be signed by the person named in the certificate, witnessed by the transfer clerk, and, before taking the certificate for sale or guaranteeing its genuineness, sends it to the office of the corporation for verification, and is informed by a person in charge and having authority in the matter that the certificate is in a condition for transfer, and, acting upon the faith of such assurance, sells the certificate and guaranties its genuineness, as required by the rules of the stock exchange, and on its being subsequently discovered to be in fact spurious and worthless, having been fabricated by the transfer clerk above genuine signatures, takes it back — the corporation will be estopped from denying its liability to indemnify the broker or his assignee.

5. STOCK CERTIFICATES — GOOD FAITH OF HOLDER.  Bad faith on the part of a stock broker, in taking from the transfer clerk of a corporation, for sale on the clerk's personal account, an apparently genuine, but actu-

ally spurious, certificate of stock of the corporation, purporting to have been issued to a third party and to be indorsed in blank for transfer, is not established by evidence that in previous transactions in which the broker had acted for the same transfer clerk in the sale of stock of the corporation he had, upon receiving the certificates sent them to the office of the corporation and procured them to be transferred to one of his clerks, where it also appears that on receiving the certificate in question the broker had sent it to the registrar of transfers and to the office of the corporation and had been informed that the certificate had been properly registered and that it was in a condition for transfer.

Reported below, 75 Hun, 100.

(Argued February 19, 1896; decided March 3, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 22, 1894, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages alleged to have been sustained by reason of defendant's refusal to transfer a certificate of shares of its capital stock at the request of the plaintiff's assignors.

The facts, so far as material, are stated in the opinion.

*William J. Kelly* for appellant. The defendant's motion to dismiss should have been granted, as at the close of the plaintiff's case the defect in his title was apparent. His vendor could transfer no better title than he himself possessed. (1 Morawetz on Corp. § 169; *M. B. Assn.* v. *M. Co.*, 3 Robt. 395; *Purchase* v. *N. Y. Exchange*, 3 Robt. 164.) There is no equity, no question of estoppel which can work against the defendant in this case. (*Holbrook* v. *N. J. Z. Co.*, 57 N. Y. 616; *McMaster* v. *Ins. Co. of N. A.*, 55 N. Y. 222; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230.) The original certificate was issued and signed by the company's officers in the regular course of business, and without knowledge that Bignell was a fictitious character. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *I. Nat. Bank* v. *Alley*, 79 N. Y. 536; *Turnbull* v. *Bowyer*, 40 N. Y. 456; 27 Fed. Rep. 486.) There

is no estoppel arising from the statements alleged to have been made at the company's office. (*Iselin* v. *Heinlein*, 16 Abb. [N. C.] 73 ; Bigelow on. Est. [4th ed.] 559.) There can be nò estoppel when the party claiming one is obliged before changing his position to inquire for the existence of other facts to make the inducements sufficient and to rely upon them also in acting. (Bigelow on Est. [4th ed.] 622 ; *McMaster* v. *Ins. Co. of N. A.*, 55 N. Y. 222 ; *People* v. *Bk. of N. A.*, 75 N. Y. 548 ; *M. B. Co.* v. *Harned*, 27 Fed. Rep. 48.) The court erred in refusing to submit to the jury the question of the good faith of the brokers, and the question whether or not they were misled by the representations on the face of the certificate. (*Powell* v. *Powell*, 71 N. Y. 71 ; *Ford* v. *Williams*, 24 N. Y. 364 ; Bigelow on Frauds, chap. 17, § 3 ; *Wohlfahrt* v. *Bechert*, 92 N. Y. 490 ; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 553 ; *Kavanagh* v. *Wilson*, 70 N. Y. 177 ; *Gildersleeve* v. *Landon*, 73 id. 609.)

*Charles Steele* and *William D. Guthrie* for respondent. The defendant is liable by reason of the original issue of the certificate. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 59 ; *Phillips* v. *M. Nat. Bank*, 140 N. Y. 556 ; *Coggill* v. *A. E. Bank*, 1 N. Y. 113 ; *Telegraph Co.* v. *Davenport*, 97 U. S. 369 ; *Robertson* v. *Coleman*, 141 Mass. 231 ; *Nat. Bank* v. *Shotwell*, 35 Kans. 360 ; *Forbes* v. *E. H. & Co.*, 21 Ohio St. 474 ; *Dodge* v. *Nat. Ex. Bank*, 30 Ohio St. 1 ; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195.) The defendant is liable by reason of its representations made at the transfer office, (*Telegraph Co.* v. *Davenport*, 97 U. S. 369 ; *Continental N. Bank* v. *Nat. Bank of Comm.*, 50 N. Y. 575 ; *Clews* v. *Bk. of N. Y. Nat. B. Assn.*, 105 N. Y. 398 ; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 N. Y. 247 ; *Stokes* v. *Mackay*, 140 N. Y. 640 ; *M. B. Co.* v. *Harned*, 27 Fed. Rep. 484 ; *Justh* v. *Nat. Bank of Comm.*, 56 N. Y. 478.) There was no error in refusing to submit to the jury the question whether the brokers acted in good faith in receiving the certificate for sale. (*Morris* v. *Talcott*, 96 N. Y. 100 ; *Macullar* v. *McKinley*, 99 N. Y. 353 ; *Jackson* v. *King*, 4 Cow. 207.)

O'BRIEN, J.    The plaintiff in this action recovered a judgment for damages sustained by his assignors in consequence of the defendant's refusal to transfer a certificate for one hundred shares of its capital stock upon request, whereby the holders of the certificate were compelled to purchase other shares of equal amount.    The defendant had a capital stock of five million dollars divided into fifty thousand shares of one hundred dollars each.    A large portion of the stock was issued and the certificates were listed upon the New York Stock Exchange and were the subject of purchase and sale by the public.    The certificates were signed by the defendant's president and assistant treasurer, and, in order to guard against frauds, countersigned and registered by the Central Trust Company, which acted as registrar of transfers, in order to authenticate the genuineness of the certificates.    The defendant had an office in the city of New York, where the transfers of its stock were made, and a transfer clerk was in attendance there to make the transfers.    On the 30th of September, 1882, this transfer clerk delivered to a firm of brokers in New York, in the ordinary course of business, a certificate for one hundred shares of the defendant's capital stock to sell for his account.    The certificate bore the genuine signatures of the defendant's president and assistant treasurer, and was countersigned by the Central Trust Company, with a certificate of its registration on the day of its date indorsed thereon.    It was in all respects regular in form and carried upon its face every assurance of genuineness, and certified that one B. Bignell was the owner of one hundred shares of defendant's capital stock.    What purported to be the signature of Bignell was indorsed thereon, under the blank form of transfer, and this signature was witnessed, or purported to be witnessed, by the transfer clerk who presented it to the brokers.    It appeared that this certificate was in fact spurious, fabricated by the transfer clerk over the genuine signatures of the president, assistant treasurer and registrar, upon the blanks used by the defendant in issuing genuine certificates, that Bignell was not a holder of any stock and that his name upon the

paper was a mere fictitious and fraudulent device. It was shown that, by the rules of the Stock Exchange, certificates sold there must either stand in the name of some member and be indorsed in blank by him, or, if standing in the name of some other person and indorsed in blank by him, must be guaranteed by a member of the exchange. The purpose of this rule is to give to the purchaser the security of the indorsement or guaranty of some member, and hence the selling broker becomes a surety for the validity and genuineness of the certificate. The defendant had knowledge of this rule or custom, but did not follow it in practice. When making transfers of stock, in case the signature of the holder was unknown to it, then it had to be attested by a witness whom it did know. In the present case the signature, indorsed on the certificate, was attested by its own transfer clerk, whose signature was well known, and so the certificate was apparently in a condition for transfer under the practice adopted at the defendant's office.

The brokers, to whom the certificate was presented by the transfer clerk, sold it in the open market for his account, but were, as already stated, obliged to guarantee its genuineness. In order to ascertain whether they could safely do so they sent the certificate by a messenger, first to the office of the Central Trust Company, the registrar, and then to the defendant's office to inquire whether it was genuine and acceptable for transfer. The Central Trust Company informed him that the certificate was properly registered and the person in charge at the defendant's office informed him, as the plaintiff claims, that the certificate was all right for transfer. The brokers did not procure it to be transferred, but being thus assured that it was in a condition for transfer at any time, they made the guaranty upon it and sold it for the account of the transfer clerk, paying to him the proceeds, retaining only the regular commissions.

Subsequently, and about two years after, when it was ascertained that the certificate was spurious and worthless, the brokers were obliged to make their guaranty good and took

it back from the purchaser, procuring and delivering to him a genuine certificate which they purchased in the market. Upon the refusal of the defendant to recognize the certificate, or indemnify the brokers for their loss, they assigned the right of action to the plaintiff.

In March, 1884, the transfer clerk, who had been in the defendant's employ for several years, absconded and then the defendant, for the first time, ascertained from an examination of the books that for years he had been engaged in fraudulently issuing certificates of its stock, including the one in question. The evidence tended to show that prior to his departure he had sole charge of the business of transfers and of the stock ledger and transfer books; that practically no supervision was exercised over his conduct and no examination made of the books, though if made the fraud of the clerk would have appeared as it did when the examination was made after the absconding. On these facts and circumstances the case was submitted to the jury and a verdict was rendered in favor of the plaintiff for the amount which it cost the brokers to replace the spurious certificate with a real one, with the interest, and the General Term has affirmed the judgment.

The principles upon which a corporation may be held liable to a *bona fide* holder of certificates of stock, fraudulently issued or put in circulation by the wrongful or criminal acts of its officers or agents, are quite well settled. Numerous cases involving these questions have received the attention of this court and quite recently some new features of such transactions have appeared. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Fifth Avenue Bank* v. *Forty-second Street, etc., R. R. Co.*, 137 N. Y. 231; *Manhattan Life Ins. Co.* v. *Forty-second Street, etc., R. R. Co.*, 139 N. Y. 146; *Know* v. *Eden Musee, etc., Assn.*, 148 N. Y. 441.)

The liability in such cases is determined by an application of the general rules of law that govern the relations of principal and agent as developed and applied to corporations, acting solely through such agencies. The principal is liable to a

third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the principal did not authorize, justify or know of the misconduct. In this case the certificate contained the genuine signatures of three authorized officers or agents of the defendant, namely, the president, the assistant treasurer and the registrar. The paper upon its face was an assurance to the public, through the acts of its officers, that a person named therein, whether a real or fictitious person, was the owner of one hundred shares of its capital stock. It had upon its face all the essential evidence of genuineness, and it was presented to the brokers for sale, apparently in proper form for transfer, by the very agent of the defendant that it had held out to the public as the person who had the power to represent and act for it in making such transfer. When the paper was delivered to the brokers by the transfer clerk, having indorsed thereon what appeared to be a regular transfer, it is difficult to see why it was not received by them with every reasonable assurance that the defendant was able to give, that the certificate was not only genuine stock, but in a condition to be transferred upon the books in favor of any one who should receive it in good faith. The paper in fact, however, was nothing but a fictitious and fraudulent device on the part of the transfer agent which he had fabricated for purposes of his own, and although the evidence tended to show that his frauds in this respect could have been detected or prevented by the exercise of reasonable diligence on the part of the defendant's officers, yet, as the brokers knew, or ought to have known, that he was dealing with himself in respect to the certificate, it may very well be that this circumstance was sufficient to put them on their guard and to impose upon them the duty of making some inquiry as to its origin and validity. The paper came to them accredited by the genuine signatures of the proper officers of the defendant and countersigned by the registrar, whose duty it was to guard against unauthorized or fraudulent issues of the stock. These signatures carried with them, to strangers at least, the very highest assurance

of the genuine character of the security. But we do not think it is necessary in this case to decide what the liability of the defendant would be in case it appeared that the brokers took the certificate without inquiry, since the proof tended to show that they were not negligent in that respect. This was really the only question of fact contested at the trial and submitted by the court to the jury. While such certificates do not possess all the qualities of commercial paper, they do possess some of them, and innocent parties, dealing in them, will be protected upon analogous principles and, in a proper case, will be entitled to compel recognition as stockholders, where power exists to issue new certificates. or to indemnity if there was not.

We think that the judgment in this case can stand upon the verdict of the jury which implies a finding of fact that before the brokers received the certificate for sale, or guaranteed its genuineness, they sent it to the defendant's office in order to ascertain whether they could safely do so, and were informed by the person in charge that it was in a condition for transfer. This was, in substance, an assurance that the stock would be transferred in case the brokers took it, or, at least, that there was no defect in the instrument to prevent the transfer. The brokers having acted upon the faith of the assurance, the defendant must be held estopped. from denying the liability to indemnify them, or their assignee, from the result of such action. (*Clews* v. *Nat. Bkg. Assn.*, 105 N. Y. 398; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 N. Y. 247, 254; *Stokes* v. *Mackay*, 140 N. Y. 640.)

There was some dispute at the trial as to the precise scope of the representations made at defendant's office by the person in charge as well as his authority to make them, but these questions were submitted to the jury upon evidence which admitted of opposing inferences, and the verdict must, on this appeal, be taken as establishing not only the representations as stated but the authority of the person in the office to deal with the subject and to make them. Assuming, as we must, that the brokers, before assuming any liability in

regard to the certificate, made general inquiry of the defendant as to its character and condition, and were then assured it was genuine and in condition for transfer, and, relying upon such assurance, they sold the certificate, making the guaranty required by the rules of the exchange, the case contains all the elements of an estoppel against the defendant. It is urged by the learned counsel for the defendant that upon the proofs the only inquiry made was as to the form of the certificate. It is scarcely to be supposed that brokers constantly dealing in stocks would take the trouble to inquire of the corporation whether its certificates were made up in proper form. The jury had the right upon all the testimony to adopt the more probable theory that the information sought by the brokers was, not as to the form, but as to the genuineness of the certificate, and that they sent it to the office of the defendant in order to know whether they could safely deal with it. The evidence as to the precise representation made at the defendant's office and the identity and authority of the person who made it was not very clear or satisfactory. There can be no doubt, however, that the brokers sent the certificate to the defendant's office for verification. The uncertainty arises in regard to what took place there and the parties to the transaction, and, when it is borne in mind that the witnesses were testifying years afterwards to transactions of every-day occurrence, it is not surprising that they were unable to give the precise words used or all the details of the interview. The proof was of such a character that under all the circumstances the court was not warranted in withdrawing from the jury the question as to what representations, if any, were actually made as to this certificate at the defendant's office as well as the agency and authority of the person in charge to make them.

The defendant's counsel asked the court to submit to the jury the question whether, in taking the certificate, the brokers acted in good faith. The request was refused, and the defendant excepted. The only evidence on this point was that in several previous transactions these same brokers acted for the same transfer clerk in the sale of shares of defendant's stock,

and, upon receiving the certificates, sent them to the defendant's office and procured them to be transferred in the name of some of their clerks, whereas in this case they made no transfer. We think that bad faith on the part of the brokers could not be found upon this testimony, especially in view of the fact that before dealing with the certificate they took the precaution to send it to the registrar, the Central Trust Company, and were informed there that it had been properly registered, and then to the office of the defendant, where they were informed, in substance, as the verdict implies, that the certificate was in a condition for transfer. While the case, in some respects, was a close one, we think that it presents no legal error that would warrant us in interfering with the verdict.

The judgment must. therefore. be affirmed, with costs.

All concur.

Judgment affirmed.