HUDSON TRUST COMPANY, Respondent, *v.* AMERICAN LINSEED COMPANY, Appellant.

**Stocks and stockholders — corporations — negligence — stock certificate signed in blank by officers of corporation, stolen by employee who forged registration certificate and negotiated security — when acceptor of certificate with forged registration cannot recover.**

At the time defendant, a stock corporation, commenced business the then president and treasurer of the company, authorized so to do by the by-laws, signed and countersigned a number of certificates of stock and placed them in charge of the transfer agent of the company. The said president and treasurer resigned a short time thereafter and were succeeded by newly-elected officers. The certificates signed by them were not canceled but were left in the custody of the transfer agent. Several years later a general clerk, who occasionally assisted the transfer agent and had access to the stock certificate books when in use but had no authority, express or implied, to issue or transfer certificates, abstracted a stock certificate, made it out in his own name as a certificate of one hundred preferred shares of stock and forged thereon the name of an officer of the trust company which was the registrar of the stock of the corporation. This certificate

the clerk pledged to the plaintiff as collateral security for a loan.   The note for the loan remaining unpaid, the certificate of stock was sold at public sale.   The stock was transferred to the purchaser thereof and thereafter to others who sought to have the certificate transferred on the books of the defendant.   Transfer was refused and the fraudulent acts of the clerk discovered.   Plaintiff refunded the money it had received on the sale of the stock and brought this action to recover the loss sustained by it upon the ground that the defendant was guilty of negligence in permitting its agents to so deal with blank stock certificates, containing signatures of its officers, as to enable a fraudulent overissue of stock to occur and plaintiff to be defrauded thereby.   *Held*, that plaintiff cannot recover.

*Hudson Trust Co.* v. *American Linseed Co.*, 190 App. Div. 289, reversed.

(Argued October 26, 1921; decided January 10, 1922.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 27, 1920, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granted a new trial.

*Alfred A. Gardner* for appellant.   Defendant cannot be held upon the theory of estoppel based upon negligence. (*Knox* v. *Eden Musee Co.*, 148 N. Y. 441, 460; *Peoples Trust Co.* v. *Smith*, 215 N. Y. 492; *Swan* v. *N. B. A. Co.*, 2 H. & C. 181; Bigelow on Estoppel, 713–715, § 10; *F. & D. Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225.)

*Victor E. Whitlock* for respondent.   Defendant conducted its business in respect to the issuing of the certificate of stock and as to keeping check upon its outstanding stock in a negligent and unskillful manner, and without due care and diligence, and is, therefore, answerable for the damage done to plaintiff.   (*Am. Ex. Nat. Bank* v. *Woodlawn Cemetery*, 120 App. Div. 119; *Titus* v. *R. R. Co.*, 61 N. Y. 237; *Allen* v. *S. B. R. R. Co.*, 150 Mass. 200; *Tomes* v. *P. B. R. R. Co.*, 39 Md. 36.)   Defendant failed in its duty to exercise reasonable supervision over its employees.   (*Bruff* v. *Mali*, 36 N. Y. 199; *N. Y., N.*

*H. & H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Ouderkirk* v. *Central Nat. Bank,* 119 N. Y. 253; *Cutting* v. *Marlor,* 78 N. Y. 454.)   Defendant's neglect was in the transaction itself and was the proximate cause of the damage that resulted to plaintiff.   (*Allen* v. *S. B. R. R. Co.,* 150 Mass. 200; *Havens* v. *Bank of Tarboro,* 132 N. C. 214; *N. Y., N. H. & H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Rockville Nat. Bank* v. *Citizens Gaslight Co.,* 72 Conn. 576; *Cutting* v. *Marlor,* 78 N. Y. 454.)   Where the certificate contains apparently all the essentials of genuineness and is in fact signed with the genuine signatures of the corporation's officers, it is an affirmation upon which the public has a right to rely that everything previously done in the issuance of such certificate has been rightly done, and defendant is estopped from denying the truth of these recitals.   (*Fifth Ave. Bank* v. *F. S. St. R. R. Co.,* 137 N. Y. 231; *Holbrook* v. *N. J. Zinc Co.,* 57 N. Y. 616; *W. M. R. R. Co.* v. *Franklin Bank,* 60 Md. 36.)

Hogan, J.   The defendant corporation was organized in December, 1898.   The authorized capital of the company was $33,500,000, equally divided between preferred and common stock.   The first president and treasurer of the company held their respective positions from January 7, 1899, to June 26, 1899, a period less than six months, when they resigned and were succeeded by newly-elected officers.

The by-laws of the company provided that certificates of stock should be signed by the president and countersigned by the treasurer, and the latter officer was to keep the accounts of the stock registered and transferred.

On January 30, 1899, by resolution of the board of directors of the company, the Central Trust Company was appointed registrar of the stock of the corporation.

One A. H. Schuyler was head of the stock transfer department as transfer agent from 1899 to August, 1901. He occupied a desk in a large room in which fifteen

to twenty employees of the corporation were at work
The room was one of a suite occupied by defendant.
Mr. Schuyler had access to several volumes of stock
certificates which when not in use by him were kept
in a vault. A number of the certificates had been signed
in blank by the first president and treasurer of the
corporation and it was the duty of Schuyler to keep
the books relating to the ownership and transfer of stock,
prepare the certificates, insert the name of the certificate
holder and the date; to make entries relating to transfer;
to have the same registered with the registrar trust
company and then make delivery of the same. One of
the employees who occupied a desk in the same room
with Mr. Schuyler was George W. Corwin, a general
clerk, particularly employed in the meal and transporta-
tion departments. Corwin was called upon more or less
frequently by Mr. Schuyler to assist him in the transfer
of stock and when so engaged had access to the stock
certificate books upon the desk when in use and as the
vault was open during the day time he had access thereto.

Corwin left the employ of the company about May 1,
1903. In September, 1910, Corwin negotiated a loan
with the plaintiff for the sum of fifteen hundred dollars
and pledged as collateral security therefor a certificate
of one hundred shares of preferred stock of the defendant
company, par value one hundred dollars each, being
certificate No. 1006. Later the loan made to Corwin
was increased to two thousand dollars, for which the same
certificate of stock was pledged and the usual collateral
note executed by him and delivered to plaintiff. The
certificate was signed by the first president and treasurer
of the defendant. The fact is conceded that Corwin
filled in the date on the certificate " March 1, 1900; "
that he inserted in the same as owner his individual
name " George W. Corwin; " that he inserted in the space
on the certificate under the words " countersigned and

23

registered this " the words " 4th day of March, 1900; " that the name " John J. Smith, Assistant Secretary," inserted as the officer signing for the Central Trust Company, registrar, and thus certifying the certificate as having been countersigned and registered, was a forgery.

December 6th, 1914, the note of Corwin remaining unpaid, the certificate of shares of stock was sold at public sale. The stock was transferred to the purchaser thereof and thereafter by transfer the same passed to Foster and Adams who sought to have the certificate transferred to them on the books of the company. Transfer of the same was refused and Corwin's misconduct then discovered.

Plaintiff thereupon refunded the money it had received on the sale of the stock and brought suit against defendant to recover the loss sustained by it upon the ground that the defendant was guilty of negligence in permitting its agents to so deal with blank stock certificates of the defendant containing signatures of its officers as to enable a fraudulent over-issue of stock to occur and plaintiff to be defrauded thereby.

At Trial Term the complaint was dismissed. The judgment there entered was reversed by the Appellate Division and a new trial ordered, that court determining that the question of defendant's negligence should have been submitted to the jury. From the order of the Appellate Division defendant appealed to this court.

Upon the trial the attorney for plaintiff in opposition to a motion to dismiss the complaint stated " there is no evidence affirmatively in the case that there was an authorized issuance of this certificate to Corwin, and from the facts and circumstances proven it may be regarded as a fair inference that Corwin unlawfully or wrongfully abstracted the certificate when Schuyler, the transfer agent, was not observing him, placed his name thereon and kept the certificate in his own safe deposit vault for a number of years." Counsel in his brief does

not vary in that particular from the position assumed by him upon the trial.   He acknowledges that it is incumbent upon the plaintiff to establish that the defendant failed to perform a duty it owed to the public to use reasonable care to prevent the negotiation of the certificate by Corwin, in consequence of which omission plaintiff had suffered damage.

The asserted negligence on the part of defendant may be summarized as follows:  (a) the conduct of its business in respect to the issuance of stock;  (b) the failure to properly keep check upon its outstanding stock;  (c) failure on the part of defendant to exercise reasonable supervision over its employees.

The evidence discloses that several volumes of certificates had been secured by defendant of the usual form of certificates and stubs, the latter containing the usual entries, the certificates when issued being detached from the stubs.

The alleged negligence of defendant is sought to be sustained by the following facts.   Evidently about the time the company commenced business the then president and treasurer of the company, who were designated in the by-laws of the defendant as the officers who would sign and countersign certificates of stock, signed and countersigned a number of certificates of stock and placed them in charge of Mr. Schuyler, the transfer agent of the company.   Mr. Schuyler was a trusted employee and, as stated by counsel for plaintiff, " there is no evidence connecting Mr. Schuyler, the transfer agent, with the fraud."

On behalf of plaintiff it is urged that the act of the president and treasurer of defendant in intrusting to the transfer agent certificates of stock signed and countersigned by them in blank, was an omission of reasonable care on their part representing the defendant, and the certificate in question being one of such certificates, notwithstanding the manner in which the same was unlawfully acquired by Corwin, forged in part and uttered

by him, that such omission of duty constituted an element of negligence.   In view of all other precautions adopted by defendant and particularly that of registration, I am unable to discover wherein such action can be held to be an act of omission of due care on the part of defendant.   The practice adopted, while it may not be universal, nevertheless does prevail in the management of many corporate bodies where transfers of shares of stock are numerous and it is recognized by counsel for plaintiff, as appears from the record where he stated to the court:  " It is conceded by the counsel for defendant that the *common custom* of having the corporate officers, in this case the president and treasurer, sign blank stock certificates in advance of their issuance *was followed* by the American Linseed Company during the year 1899 and continuously since, and that the *usual custom* of lodging the blank forms thus signed with the transfer agent was followed by the American Linseed Company in 1899 and has always been followed by it since that time." The company presumably found it necessary to employ a competent person for the position of transfer agent due to the numerous duties to be performed by the president and treasurer.   That Mr. Schuyler was not only presumptively honest and capable but concededly innocent of any wrong by Corwin is conceded.   To attach to the transaction stated an inference of neglect of duty on the part of defendant would imply that defendant should anticipate that Schuyler, the transfer agent of the company, or some other employee might commit a crime in the wrongful issue of one or more of the certificates intrusted to him.   A determination that the officers of a corporation must sign and countersign certificates of stock only when issued or upon transfer to avoid a charge of negligence would result in requiring that such officers would act not only in an administrative capacity but likewise in a clerical capacity.

It is further urged as an additional omission of duty

on the part of defendant that after the resignation of the first president and treasurer and the election of their successors in July, 1899, but at what time does not appear, the newly-elected president said to the transfer agent: " I think you had better have these old certificates with Miles and Douglas' names on destroyed." The witness who overhead the remark testified that he could not fix the time when he heard the same. He did not know. He could not state whether it was made early after the new president was elected or six months or a year afterwards, he could not place the time. There is no evidence in the record as to the time when Corwin abstracted the certificate in question from the volume containing the same. His crime was not discovered until December, 1914, when the certificate was presented for transfer. Assuming that Mr. Schuyler had destroyed the volumes containing certificates signed and countersigned by the former president and treasurer when the newly-elected president made the suggestion to him, whether made in July, 1899, or six months or one year thereafter, how could any court or jury draw an inference therefrom that the loss occasioned to plaintiff would have been prevented? To permit such inference would be to exclude a possibility that Corwin had abstracted the certificate before the books were destroyed and to permit a finding upon mere conjecture. Counsel asserts that as the certificate is dated March 1, 1900, eight months after the new president assumed his duties, such date presumptively fixes the time of the theft of the certificate. I cannot assent to the argument. The date, " March 1, 1900," was placed on the certificate by Corwin as a part of the criminal act committed by him. The more reasonable presumption is that the inclusion of the date, the name of Corwin as holder, and forgery of the name of the assistant secretary of the registrar were all one transaction executed at or about the time he pledged the stock to plaintiff. Assume, however, that the date was inserted,

March 1, 1900, the evidence fails to disclose that Schuyler prior to that time had been advised to destroy the certificates signed by the former officers.

Reliance is placed upon an additional fact as permitting an inference of negligence. It is said that Corwin was called upon from time to time by Mr. Schuyler to assist him in the transfer department.

The witness upon that subject testified that he observed Corwin assisting Schuyler at various times in his general work. He had never seen Corwin hand out certificates to persons after transfers were made, had not seen Corwin write names on certificates and did not recall at any time having seen certificates other than those in which Mr. Schuyler had written in the name of the holder or observe delivery of certificates save by Mr. Schuyler.

Corwin was not a clerk in the transfer department but merely a general clerk; he was not clothed with authority, express or implied, to issue or transfer certificates. The mere fact that he performed some clerical duties in assisting the transfer agent does not justify an inference that defendant did not exercise reasonable care in a supervision of the work of that department. Had Corwin been permitted by defendant to issue certificates, transfer the same, make entries in the stock register and generally perform the work of the transfer agent in his presence or absence, an entirely different question would be presented. The only labor Corwin performed was in the presence of the transfer agent and only when called upon to do so.

Stress is laid upon the fact that the defendant omitted to keep a check upon its outstanding stock and to the fact that the present transfer agent who has held the position since 1908 prepared monthly balance sheets showing the outstanding stock, which trial balance is complete without taking into consideration the certificate in suit. The witness described in detail the method employed in the transfer of stock on the books of the company which refers to the stock account. And, though

the witness did not testify as to the source from which the trial balance was made, it is a fair assumption that it was made from the stock ledger, as her testimony as to debit and credit was based thereon, especially in view of the testimony of the auditor of the company called by plaintiff, to the effect that the stubs of the certificate books are not the record of the stock outstanding. Separate books are kept showing the stock outstanding. The present transfer agent testified also that Corwin was not the holder of any stock in the defendant company and the books of the Central Trust Company, the registrar, disclosed that the certificate in question had not only never been issued but that the certificate had been canceled. The facts are a complete answer to the proposition.

Lastly it is urged that defendant did not advertise and give public notice that the outstanding certificate was invalid, and a failure to do so in connection with the other facts was some evidence of negligence. The books of the company did not show Corwin a stockholder or the certificate outstanding. The books balanced without reference to such certificate. The books of the registrar disclosed that the certificate had been canceled. The discovery of the existence of the certificate was not until December, 1914, four years subsequent to the pledge of the stock to plaintiff. In view of the stated facts, no duty devolved upon defendant to advertise the loss of a certificate which its book disclosed had not been issued. Nor would such notice if given avail plaintiff who years before had advanced money on the same.

The law is well settled in this state that certificates of shares of stock do not partake of the character of negotiable instruments within the well-established meaning of that phrase. Concededly the certificate in question never had a legal inception. The defendant was wrongfully deprived of its custody of the instrument by one who was not intrusted with possession of the same or

any actual or implied authority to perform any act relating to the issuance of transfer of the certificate. The only servant of defendant authorized to issue and transfer certificates of shares of stock was the transfer agent, Mr. Schuyler, a man who, as stated, was not only presumably honest, but concededly so. The record is not only barren of evidence which would admit of an inference that Schuyler at any time assumed to delegate the duties of his position to Corwin, but on the contrary, negatives such inference as well as any act on the part of the defendant which directly or by implication tends to disclose that authority was conferred upon Corwin to do any act necessary to the issuance or transfer of certificates of stock.

It would not be profitable to refer at length to the decisions relied upon by respondent to sustain the order of the Appellate Division. A reference to some of the leading cases cited will suffice to disclose the reasons prompting the conclusions reached therein. In *Titus* v. *Gt. Western T. Road* (61 N. Y. 237); *Allen* v. *So. B. R. R. Co.* (150 Mass. 200); *Tomes* v. *P. B. R. R. Co.* (39 Md. 36); *Havens* v. *Bank of Tarboro* (132 N. C. 214); *American Exchange Nat. Bank* v. *Woodlawn Cemetery* (120 App. Div. 119; revd., on other grounds, 194 N. Y. 116) a right of recovery was sustained because of the act of the corporation in intrusting certificates of stock signed in blank to officers or agents of the company clothed with authority to issue the same and which officer thereafter fraudulently issued certificates. The same right of recovery was also sustained in instances where like certificates were delivered to the transfer agent of the company who was clothed with power by the corporation to issue and transfer the same, but likewise fraudulently issued and disposed of them for his individual purpose. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Fifth Avenue Bank* v. *42d St. & G. St. F. R. R. Co.*, 137 N. Y. 231; *Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652; *Mutual Life Insurance Co.* v.

*42d St. & G. St. F. R. R. Co.*, 74 Hun, 505.)   In the *Jarvis* case the additional fact appeared that before the. fraudulent certificate was issued inquiry relating to the same was made at the office of the registrar and the latter represented the certificate as genuine.   In the *Mutual Life Ins. Co.* case the plaintiff also, before making a loan on a fraudulent certificate, made inquiry of a bank which had previously made a loan on the same certificate as to the genuineness of the instrument and was advised that the bank had inquired at defendant's office as to the genuineness of the same and had been informed that the certificate was genuine.   The court held that the company was liable on the certificate as plaintiff was entitled to the benefit of the representations made by the defendant to the bank as to the genuineness of the certificate.

As will be observed in the cases referred to, the fraudulent certificates had been issued by officers and agents of the various defendants authorized to issue the same and in many of the cases signatures of officers required appeared upon the face of the certificates issued; thus the decisions cited and relied· upon are clearly distinguishable from the case at bar.   Here there was absence of authority on the part of Corwin to issue certificates or take part in a transfer of the same.   His act in abstracting the certificate from the volume wherein the same was bound was perpetrated solely with a view to his private gain and was ·not connected with any semblance of authority possessed by him as an officer, agent or servant of the defendant.

We do not deem it necessary to recapitulate the facts involved in the cases of *Knox* v. *Eden Musee Am. Co.* (148·N. Y. 441) and *Manhattan Life Insurance Co.* v. *42d Street & G. St. F. R. R. Co.* (139 N. Y. 146) or dwell upon the principles therein established.   Suffice it to say our conclusion is that the instant case is controlled by our decisions in the two stated cases.

The order of the Appellate Division should be reversed

and the judgment of the trial court reinstated, with costs to appellant in this court and the Appellate Division.

HISCOCK, Ch. J.   I concur in the result.   I think the fact that plaintiff accepted the stock certificate in question without any genuine countersignature and certificate by the duly appointed registrar of defendant's stock certificates that the same had been duly registered, but rather accepted said stock certificate with a forged purported certificate by the registrar is a very important circumstance in determining its right to recover herein.

The Central Trust Company had been duly appointed registrar of the capital stock of the defendant corporation. While the certificate did not by words upon its face specifically require that a stock certificate must be countersigned and registered by such registrar in order to make the transfer valid, the fact that a blank certificate for this purpose was printed upon the certificate and that the same purported to have been executed by the registrar, considered in the light of the knowledge which we must assume was possessed by plaintiff of the common practice to require certificates of stock to be countersigned and registered, was in my judgment notice to the plaintiff that in actual practice such countersigning and registering were essential to give the stock certificate validity.   Of course if this is so plaintiff was charged with the obligation of knowing or ascertaining that the certificate of registry was genuine and if, as the result of overconfidence and neglect of inquiry, it accepted a stock certificate upon which the registrar's certificate had been forged, it was itself guilty of neglect and mistake, which prevents it from claiming that defendant was guilty of negligence.

McLAUGHLIN, J. (dissenting).   I am of the opinion that upon the undisputed facts it was for the jury to say whether or not the corporation was negligent in permitting hundreds of its certificates of stock to be

signed in blank by the president and treasurer, to be thereafter filled out by the transfer agent, assisted by other employees; in permitting the transfer agent to place such certificates in a vault to which many of its employees had access, and not to guard or protect them in any other way; in not having some system or method by which it could determine from time to time whether certificates had been improperly filled out or taken from the vault without authority; in not ascertaining — after the president had given directions to have all the certificates which had been signed by the former president and treasurer destroyed — if such order had been carried out; and whether the corporation, by its careless method in dealing with its stock certificates, made it possible for the one in question to be obtained by Corwin, which appeared to be regularly issued and valid upon its face.

If the jury found the corporation thus negligent, then it would have a right to say such corporation was liable to a third party for the damages sustained.

Such liability would rest upon the well-settled principle of law that where one of two innocent persons must suffer a loss by reason of the dishonesty of a third person, the loss must be borne by him whose negligence enabled the third party to commit the dishonest act. This principle is as applicable to corporations as to individuals. That there was a question of fact for the jury is sustained not only by the decisions of our own, but other states. (*Allen* v. *So. Boston R. R. Co.*, 150 Mass. 200; *C., N. O. & T. P. R. Co.* v. *Citizens' Nat. Bank*, 56 Ohio St. 351, 380; *National Bank of Webb City* v. *Newell-Morse Royalty Co.*, 259 Mo. 637; *Havens* v. *Bank of Tarboro*, 132 N. C. 214; *Western Maryland R. R. Co.* v. *Franklin Bank*, 60 Md. 36; *Green* v. *Caribou Oil Mining Co.*, 178 Pac. Rep. 950.)

The case is distinguishable from *Knox* v. *Eden Musee Am. Co.* (148 N. Y. 441), upon which the appellant chiefly relies. There, an employee extracted from a safe surrendered certificates and negotiated loans upon them. The

employee had no authority, express or implied, to issue stock certificates. The certificates there were placed in the safe by the president of the corporation and the employee who took them out was directed to cancel them. Instead of doing that he took them and negotiated a personal loan. It was held in doing so he committed larceny and could give no better title to them than if they had been certificates of other corporations and he had stolen them.

The certificate here in question was delivered to the clerk, properly signed by the president and treasurer. It was delivered for the purpose of having him fill in the name of the person to whom it was to be delivered. When the blanks were filled, and the stock issued, the public had a right to rely upon the representation that the stock was duly issued to the owner and any one who loaned money upon its security would acquire, as against the corporation, a good title. It is true that the certificate was not sent to the registrar and that the signature of such officer was forged. The signature of the registrar was not necessary to give validity to the stock certificate, and especially so since it was not pledged with the plaintiff until upwards of seven years after it purported to have been issued.

I, therefore, vote to affirm the judgment appealed from.

HISCOCK, Ch. J., in memorandum, in which also CARDOZO and POUND, JJ., concur, and CRANE, J., concur with HOGAN, J.; MCLAUGHLIN, J., reads dissenting opinion, with whom ANDREWS, J., concurs.

Ordered accordingly.