ROBERT PENINGTON,

*vs.*

COMMONWEALTH HOTEL CONSTRUCTION CORPORATION, a corporation of the State of Delaware.

HUGH MCATAMNEY,

*vs.*

BROADWAY, SEVENTH AVE. & 56TH STREET HOTEL REALTY CORPORATION, a corporation of the State of Delaware.

*New Castle, Aug. 8, 1931.*

*Charles C. Keedy,* for receiver.

*Walter E. Godfrey,* of the firm of Godfrey & Marx, of New York City, for claimants.

THE CHANCELLOR: There is no evidence which would warrant the conclusion that the claimants knew that McAtamney had purloined the certificates evidencing the shares which they purchased from him.

The question therefore is whether an innocent purchaser for value whose title to the shares is derived from a thief can under the circumstances here shown, be recognized as the owner.

Before answering that question, it should be pointed out, that the *Uniform Stock Transfer Act* of New York

(the purchases by the claimants were made in New York) has no application to the case. The solicitor for the claimants argues that it does. The New York statute has not been pleaded. But waiving that, and taking notice of it as though it were pleaded, it appears that the act by its own terms can have no application, for its operation is confined only to "certificates" and "shares" in a corporation organized under the laws of New York or "of another state whose laws are consistent with this act." See *Turnbull v. Longacre Bank,* 249 *N. Y.* 159, 163 *N. E.* 135, 137. There is no law of Delaware consistent with the New York act. Further consideration of the New York act and its applicability here is therefore unnecessary.

The certificates held by the receivers in New York were properly endorsed for transfer in blank by the record holders of the shares named in them. They were thus in condition to be passed on by McAtamney with the appearance of regularity in the matter of their transfer from the registered owners. The claimants contend that if the receivers left the certificates in that condition in their offices in the custody of McAtamney as their employee, they were guilty of such negligence that neither they as receivers, nor the corporation in whose place they stood as its representatives, should be allowed to question the title which the claimants as innocent purchasers from McAtamney of the endorsed certificates were entitled to have transferred in their own names. It was the duty, the claimants contend, of the receivers to mark the certificates by stamping or perforations so as to show they were cancelled and thereby render it impossible for McAtamney or any one else to purloin them from the safe and pass them off with all the *indicia* of regularity to innocent purchasers. The mere fact, say the claimants, that the receivers permitted the certificates to remain in their offices without such protective means against their currency is enough in iself to warrant the raising of an estoppel in favor of the purchasers from McAtamney.

And it is further contended that the receivers' alleged

negligence upon which the claimants base an estoppel in their favor is aggravated by the additional circumstance that they allowed their offices to be used as a place where certificates of stock could be bought and constituted Mc-Atamney their agent to make sales of stock and delivery of certificates. If this were true, the case of the claimants would appear in a very different light from that in which it does. There is not one word of competent evidence, however, which supports the idea that McAtamney possessed any such powers of agency from the receivers as to justify any one in believing that he was in any sense authorized to sell and make delivery of stock for the receivers. The only testimony that supports such an idea is that McAtamney told the claimants so. That testimony is of course incompetent, for agency cannot be established by the admissions of the agent. The receivers gave no express authority to Mc-Atamney to sell and transfer stock, nor is there any evidence that their conduct was such as to warrant anyone in believing that authority in that behalf to McAtamney could be implied. The receivers were ignorant of McAtamney's dealings and had no knowledge to put them on inquiry.

Neither can negligence be attributed to the receivers on the theory that they had a dishonest man employed as custodian of their offices and papers. No attempt has been made to show that McAtamney had ever done anything in the past that would justify a suspicion that he was not to be trusted. The receivers had a right to believe that Mc-Atamney was honest and would not appropriate any of the assets to his own use.

While a certificate of stock endorsed for transfer by the registered holder possesses a degree of negotiability, yet its negotiability is not so complete as is that of commercial paper endorsed before maturity. *Knox v. Eden Musee American Co.*, 148 *N. Y.* 441, 42 *N. E.* 988, 992, 31 *L. R. A.* 779, 51 *Am. St. Rep.* 700. The case in which this ruling was made is a case quite similar in its facts and in the principles involved to the instant one. In that case three certifi-

cates, each for five shares of stock, had been turned in to the corporation duly endorsed for transfer. They were endorsed in blank. New certificates were issued to the person entitled thereto. The old certificates were not cancelled as the by-laws of the company required before any new certificates were issued. One Jurgens was employed by the company as its general manager and he was in charge of its office. The company believed him to be honest. Jurgens belied the trust reposed in him. Instead of cancelling the old certificates as it was his duty to do, he took them from the safe and, through the agency of an employee under him, negotiated a loan from a bank using the old certificates as collateral. The loan was not paid and the bank sought to secure a transfer of the certificates to its own name. The company refused to make the transfer. Thereupon suit was instituted for damages. The Court of Appeals of New York in that case heard and disposed of substantially all the arguments advanced here in behalf of the claimants. While it recognized to a limited extent the negotiability of stock certificates duly endorsed for transfer in blank by the registered owner of the shares, it declined to recognize their negotiability so far as to deny "to the owner of a stock certificate which has been lost without his negligence, or stolen, the right to reclaim it from the hands of any person in whose possession it subsequently comes, although the holder may have taken it in good faith and for value." The court tested the efficacy of Jurgens' act of delivering the old certificates to the bank by the extent of his agency. With respect to him it said, as it may likewise be said here of McAtamney, that he was a mere servant with no authority express or implied to issue the surrendered certificates which were mere vouchers in the possession of the company. Furthermore, the court held that there was no negligence attributable to the company because it had not seen to it that the old certificates were cancelled. When it saw to it that the certificates were placed in its safe, it was not guilty of negligence in allowing a trusted servant to

have access to them by possession of a key. "There must," said the court, "be something more than the mere intrusting to a servant of the custody of a chattel, and the consequent opportunity for theft, in order to preclude the master from reclaiming it, if stolen by the servant, and sold to another." This language is particularly applicable here, for there is nothing shown in this case upon which to base a charge of negligence against the receivers except the mere intrusting to a supposedly honest servant of the custody of the certificates. As in the New York case, if Jurgens had been known to the company to be dishonest or there had been reason for the company to suspect his honesty, the court said a different question would have been presented, so here it may be said that if the receivers knew McAtamney to be dishonest or had reasons to think he might be, the case would be a different one.

Barring the element of negligence in the selection and retention in service of the servant who turns out to be dishonest (and there is no such negligence in this case), the question upon which the liability of the corporation for shares of its stock acquired by an innocent purchaser from such a servant turns, is the nature and extent of his employment. It is a question primarily of agency. If the duties of the agent, expressly conferred or impliedly deducible from circumstances created by the corporation's conduct, were such as had to do with the issuance, delivery, or sale of stock, the fact that the employee exceeded the limits of his actual authority would constitute no defense for the corporation. That the nature of the wrongdoer's agency and its extent is the test by which the corporation's liability is to be measured is not only recognized in the *Eden Musee Case*, cited *supra*, but is expressly decided in *Hudson Trust Co. v. American Linseed Co.*, 232 *N. Y.* 350, 134 *N. E.* 178, 181. In that case the court said after discussing certain cases,

"As will be observed in the cases referred to, the fraudulent certificates had been issued by officers and agents of the various

defendants authorized to issue the same, and in many of the cases. signatures of officers required appeared upon the face of the certificates issued; thus the decisions cited and relied upon are clearly distinguishable from the case at bar. Here there was absence of authority on the part of Corwin to issue certificates or take part in a transfer of the same. His act in abstracting the certificate from the volume wherein the same was bound was perpetrated solely with a view to his private gain, and was not connected with any semblance of authority possessed by him as an officer, agent, or servant of the defendant."

McAtamney was not empowered by the receivers to sell stock held by them. The transfer agent was in the habit of calling him for the purpose of checking their records so as to know if stock offered for transfer stood in the name of the transferor. He thus acted in only a clerical capacity for the accommodation of the transfer agent. He was not vested by either the corporation or the receivers with any duty to issue certificates.

It is contended by the claimants that the receivers were negligent in not keeping a watch over McAtamney and looking over the papers in the office at frequent intervals in order to make sure that he was not stealing the things entrusted to his custody. I do not think so. They had no reason to be spying upon him. If they had, they doubtless would have discharged him. They had every reason to believe that he was honest.

The exceptions to the claims of stockholders which are based on the certificates stolen by McAtamney, will be sustained. The claimants are not entirely free from negligence. They bought stock from a man who told them he was selling stock for the receivers. If the receivers were selling stock through McAtamney, they were engaged in a rather unusual activity unless a court order authorized it. The claimants ought to have known this. A simple investigation on their part in the form of an inquiry addressed to the receivers would have revealed whether McAtamney's representations of authority were true. They made no such inquiry. They chose to take McAtamney's word in every

particular, and were not induced so to do by anything the receivers either said or did.

Order sustaining the exceptions.